Exhibit N



October 15, 2018

*Via email*

Patrick C. Greeley
Kendricks, Bordeau, Keefe, Seavoy & Larsen, P.C.
pgreeley@kendrickslaw.com

Re: *Missouri Primate Foundation v. PETA*
*DeYoung Family Zoo Confidentiality and Nondisclosure Agreement*

Dear Mr. Greeley,

As you know, People for the Ethical Treatment of Animals, Inc., and Angela Scott (together, "PETA") have, at your client's insistence, been willing to agree to substantial concessions throughout a *ten-page* Confidentiality and Nondisclosure Agreement ("Agreement") that we have negotiated with you for months in an effort to avoid the need to compel enforcement with the subpoena validly served upon the DeYoung Family Zoo (the "Zoo") on June 20, 2018.

In your letter of October 3, you indicate that PETA can no longer inspect at least certain chimpanzees or enclosures consistent with the subpoena and our prior agreement. PETA responds to the points raised in your letter.

First, you state that "the inspection would violate 9 CFR 2.313(d)(1) [sic] and section 2.131(d)(1)(c)(1) [sic] of the Animal Welfare Act and Animal Welfare Regulations publication," and further that there is no public barrier and one cannot be constructed. An inspection pursuant to a subpoena is not "public exhibition" and the regulations for public exhibitions therefore do not apply. Even assuming that they do, however, section 2.131(c)(1) provides:

> During public exhibition, any animal must be handled so there is minimal risk of harm to the animal and to the public, with sufficient *distance and/or barriers* between the animal and the general viewing public so as to assure the safety of animals and the public.

9 C.F.R. § 2.131(c)(1) (emphasis added). Contrary to your representation, this clearly *does not require a barrier* to be constructed. Rather, "sufficient distance … between the animal and the general viewing public" suffices to comply with the regulation. In light of the fact that the chimpanzees at issue— those transferred from Connie Braun Casey in December 2017 and July 2017—arrived at the Zoo as adults and an adolescent, it is a certainty that the enclosures in which they are held allow for observation from a "sufficient distance" such that there is no direct contact with the chimpanzees. Please confirm if this is not the case and the chimpanzees at issue are sometimes held

PEOPLE FOR
THE ETHICAL
TREATMENT
OF ANIMALS
FOUNDATION

Washington, D.C.
1536 16th St. N.W.
Washington, DC 20036
202-483-PETA

Los Angeles
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323-644-PETA

Norfolk
501 Front St.
Norfolk, VA 23510
757-622-PETA

Berkeley
2855 Telegraph Ave.
Ste. 301
Berkeley, CA 94705
510-763-PETA

PETA FOUNDATION IS AN
OPERATING NAME OF FOUNDATION
TO SUPPORT ANIMAL PROTECTION.
AFFILIATES:
• PETA U.S.
• PETA Asia
• PETA India
• PETA France
• PETA Australia
• PETA Germany
• PETA Netherlands
• PETA Foundation (U.K.)

in enclosures where there are no barriers *and* there is not sufficient distance to avoid direct contact between, e.g., your clients or their staff and the chimpanzees.

You also appear to have intended to cite to 9 C.F.R. § 2.131(d)(1), which states, "Animals shall be exhibited only for periods of time and under conditions consistent with their good health and well-being." Again assuming that this provision would even apply to observations of the chimpanzees pursuant to subpoena, which it does not, you appear to indicate that certain enclosures cannot be inspected in person because it would not be consistent with the chimpanzees' "good health and well-being." In purported support of the assertion that simply being in the chimpanzees' presence will somehow harm them, you state that "PETA has previously acknowledged the potential harm intruders cause chimpanzees in the following video," and allege that the video provides support for your position that "[h]aving eight intruders enter the chimpanzees' enclosures would likely constitute a material violation of the ESA."

Your reference to this video alone demonstrates an absence of good faith in these negotiations. As you well know, the video, published by PETA, includes footage from and explains National Institutes of Health (NIH) experiments on baby monkeys (not chimpanzees) that NIH intentionally bred to be mentally ill. The babies are taken from their mothers and held alone in small metal cages in a laboratory while experimenters, masked in order to intentionally appear particularly threatening, stare at them from just a few feet away as the monkeys frantically try to escape.

Here, the primates at issue are chimpanzees. All but one of the chimpanzees is more than 20 years old, and the youngest at least 13. None of the chimpanzees were bred to be mentally ill. PETA assumes that none will be held in a metal cage no larger than five-by-five. The parties have already agreed that, if the chimpanzees appeared distressed, they would leave the area—not stand glaring at them as they desperately attempt to escape. And far from being babies in a laboratory, these chimpanzees have been used in television commercials, public encounters, and other performances, loaned to others, and sold, held as pets, and relocated several times. The comparison is baseless and frivolous.

Further, your assertion that having eight individuals merely present at the inspection "would likely constitute a material violation of the ESA" is entirely without merit. You have provided no support whatsoever for the allegation, and it is undermined by your subsequent agreement that "PETA can personally inspect areas where the barrier restrictions can be complied with." It is also unclear why the assertion "that DeYoung has no proof that the attorneys, videographer, or experts are substantially educated in caring for chimpanzees" is in any way relevant to "a material violation of the ESA" during an observational inspection. PETA has not requested to "car[e] for" the chimpanzees. Additionally, even if it were relevant, PETA has agreed to identify the attendees, which include experts with substantially greater experience with chimpanzees than the Zoo.

In light of the above, your alternative proposal to remotely instruct a DeYoung employee wearing a body camera to inspect "the interior housing areas" and all of the chimpanzees is insufficient and rejected. PETA requests your confirmation that you will proceed with the inspection as described in the subpoena.

Finally, PETA will no longer agree to the scope of the non-disclosure of information as described in Section 1.b. Currently, this section would prevent PETA from filing a complaint to law enforcement authorities or enforcing violations of the law even if animals are observed suffering and in severe distress. This is inconsistent with the Zoo's expressed concern for the well-being of the animals held there, as well as our ethical duties as counsel. Accordingly, PETA requires that this section include a provision that allows PETA to seek leave of court to use Confidential and Proprietary Information received to report apparently unlawful behavior that negatively impacts animal welfare upon a showing of a potential violation. PETA also rejects your added requirement that the Receiving Parties, "upon the request of the Zoo, seek[] a temporary injunction" for any reason.

I am available to confer regarding the Agreement at your convenience. I would appreciate your response by the end of the day this Friday, October 19.

Very truly yours,

Jared Goodman
Deputy General Counsel for Animal Law
323-210-2266 | JaredG@petaf.org