IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | |
| Movant, | ) ) | Case No:  4:18-mc-00798-CDP |
| v. | ) ) | |
| DEYOUNG FAMILY ZOO, | ) ) | |
| Respondent. | ) | |

## DEYOUNG'S RESPONSE IN OPPOSITION
## TO MOVANT'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS
## INCLUDING MOTION TO QUASH AND FOR PROTECTIVE ORDER

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer, by and through counsel, hereby oppose the Motion to Compel Compliance with Subpoenas filed by People For The Ethical Treatment of Animals, Inc. ["PETA"], which includes DeYoung's Motion to Quash and for Protective Order. PETA'S motion to compel concerns subpoenas issued in the underlying case of *Missouri Primate Foundation et al. v. People for the Ethical Treatment of Animals, Inc. et al., Case No. 4:16-CV-2163-CDP*.

Two subpoenas were served upon Harold DeYoung and Carrie Cramer. **Exhibits 1 and 2**. DeYoung was served with a Subpoena to Produce Documents, Information, or Objects and to Permit Inspection of Premises which was directed to the Records Custodian for DeYoung Family Zoo. **Exhibit 1**. Cramer was served with a Subpoena to Testify at a Deposition in a Civil Action which was directed to DeYoung Family Zoo. **Exhibit 2**.  Harold DeYoung is not a party to the underlying case. Carrie Cramer is not a party to the underlying case. Nor is the DeYoung Family Zoo a party to the underlying case.  Cramer is DeYoung's significant other and fiancé.

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer hereby assert their constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, thus invoking their right against self-incrimination. DeYoung and Cramer ask the Court to protect them from being compelled to testify as it is their constitutional right to invoke the Fifth and Fourteenth Amendments.

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer also request that the Court quash PETA's subpoenas pursuant to FRCP 45(d) because the subpoenas subject a person to undue burden and requires the disclosure of privileged information. Moreover, DeYoung and Cramer ask that the Court enter a protective order pursuant to FRCP 26.

Further, DeYoung and Cramer respectfully request that the Court deny PETA's motion to compel for the reasons set forth in the written objections[1] which were served by DeYoung's attorney upon PETA's attorney in a letter dated June 26, 2018, filed herein as **Exhibit 8**:

1. The subpoenas are unduly burdensome and intended to harass and annoy DeYoung, a non-party with which PETA has previously been engaged in litigation in Michigan and to which and about which PETA has sent demand letters and USDA requests in the past.

2. The subpoenas seek confidential and proprietary commercial information of DeYoung.

3. The subpoenas seek information which is not relevant to the underlying case.

---

[1] DeYoung also objected on the grounds that the subpoena violated Rule 45(c)(2)(a) and that the subpoena did not allow DeYoung a reasonable period of time to comply with the request for production of documents. Exhibit 8.

4.   The subpoenas are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.

5.   The subpoenas are not reasonably calculated to lead to discovery of admissible evidence in this case involving the conduct of Plaintiffs at a facility in Missouri unrelated to the DeYoung facility in Michigan.

6.   The subpoenas are overbroad in scope and vague and ambiguous as written, in that it contains no limitations on the time, scope, attendees, and protocol of the proposed inspection.

7.   PETA can obtain the requested information or its substantial equivalent from the parties to this lawsuit and because, on information and belief, PETA has failed to request such information in discovery, thereby violating its duty under Rule 45 to avoid imposing undue burden and expense on non-party DeYoung.

8.   With respect to the document production, the subpoena is unreasonably vague in that it does not restrict the documents to those documents in the possession of DeYoung.

## **BACKGROUND**

Harold L. DeYoung [hereinafter "DeYoung"] is the sole owner of The DeYoung Family Zoo, which is located in Wallace, Michigan. **Exhibit 3**.  As the sole owner of The DeYoung Family Zoo, DeYoung formed a single-member limited liability company, DeYoung Family Zoo, L.L.C.  Id.  DeYoung Family Zoo, L.L.C. was organized and registered in the State of Michigan.

Id.  *See* *//cofs.lara.state.mi.us, for corporate search, Identification Number: 801269306.*
DeYoung formed DeYoung Family Zoo, L.L.C. for the purpose of operating his zoo, The
DeYoung Family Zoo. Id.

Harold L. DeYoung owns DeYoung Family Zoo by himself. Id.  He is the only owner of
DeYoung Family Zoo, L.L.C. Id.  He is also the only officer of DeYoung Family Zoo, L.L.C. Id.

Carrie Cramer is Harold L. DeYoung's significant other ["fiancé"]. **Exhibits 3 and 4**.
Cramer works at the DeYoung Family Zoo, L.L.C. **Exhibit 4**. However, she does not own
DeYoung Family Zoo, L.L.C. **Exhibits 3 and 4**. Nor is she an officer of DeYoung Family Zoo,
L.L.C. **Exhibits 3 and 4**.

*Case No. 2:16-cv-000282* [Western District of Michigan] is pertinent to DeYoung's history
with PETA. As detailed therein, PETA sent a letter to DeYoung October 28, 2016, threatening to
file a lawsuit against DeYoung under the Endangered Species Act, 16 U.S.C. § 1538 (a)(1)(B),
and its implementing regulation, 50 C.F.R. § 17.21(c)(1). **Exhibit 6**. *See Case No. 2:16-cv-000282*
*[ECF No. 1].* More specifically, PETA's letter demanded that DeYoung relinquish chimpanzees
which were owned by and in his possession. Id. *See Case No. 2:16-cv-000282 [ECF No. 1].*

The Court's file confirms that DeYoung filed a Complaint against PETA on December 27,
2016, in the United States District Court for the Western District of Michigan. **Exhibit 5**. *Case*
*No. 2:16-cv-000282 [ECF No. 1].*  DeYoung's Complaint specifically denied the allegations set
forth in PETA's letter of October 28, 2016. *See Case No. 2:16-cv-000282 [ECF No. 1].* Moreover,
DeYoung's Complaint sought declaratory and injunctive relief to enjoin and prohibit PETA from
filing any action against the DeYoung Family Zoo. *See Case No. 2:16-cv-000282 [ECF No. 1].*

DeYoung's Complaint also stated a defamation claim against PETA referable to press
releases and public statements about DeYoung Family Zoo which were false, misleading,

defamatory, malicious, willful and wanton. *See Case No. 2:16-cv-000282 [ECF No. 1]*. After DeYoung's Complaint was filed, PETA withdrew its Notice of Intent to Sue. *See Case No. 2:16-cv-000282 [ECF No. 8]*. DeYoung then dismissed the Complaint. *See Case No. 2:16-cv-000282 [ECF No. 8]*.

On June 20, 2018, PETA served Harold L. DeYoung and Carrie Cramer with subpoenas issued out of the Eastern District of Missouri in the underlying case of *Missouri Primate Foundation et al. v. People for the Ethical Treatment of Animals, Inc. et al., Case No. 4:16-CV-2163-CDP*. The subpoenas commanded DeYoung to produce records and documents; to permit PETA to enter the zoo facilities for an inspection; and to produce a representative for deposition.

The underlying case concerns PETA's allegations against Connie Braun Casey and the Missouri Primate Foundation [MPF]. *4:16-CV-2163-CDP (ECF No. 31)*. PETA alleges that Casey and MPF have illegally "taken" endangered chimpanzees in violation of Endangered Species Act ("ESA"). Some of the chimpanzees were transferred by Casey and MPF to the DeYoung Family Zoo. *4:16-CV-2163-CDP (ECF No. 132)*. As the Court noted in its Memorandum and Order of November 26, 2018, the USDA transfer document as to the chimpanzees who have been moved to the DeYoung Family Zoo in Michigan indicates that they were in excellent condition when they were moved. *4:16-CV-2163-CDP (ECF No. 132, page 4)*. NOTE: DeYoung and Cramer are not parties to the underlying case.

On June 26, 2018, DeYoung's attorney[2] served PETA's attorney with written objections to the subpoenas. **Exhibit 7, paragraph 12; and Exhibit 8**. Thereafter, DeYoung's attorney and PETA's attorney conferred over a period of several months in an effort to resolve this dispute. Although the deposition was scheduled for July 23, 2018, PETA's attorney agreed that he did not

---

[2] Attorney Patrick C. Greeley, 128 West Spring Street, Marquette, Michigan 49855.

want to take DeYoung's deposition until after the inspection of DeYoung's premises was complete. **Exhibit 9**.

<u>**ARGUMENT**</u>

**A. Privilege Against Self-Incrimination**

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer assert their constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, thus invoking privilege against self-incrimination. The Endangered Species Act carries criminal penalties in 16 USC Sec 1540(b)(1) and PETA previously threatened to file suit against DeYoung.

Under the Fifth and Fourteenth Amendments a person may not be compelled to give testimony in any proceeding, civil or criminal, formal or informal, before administrative, legislative or judicial bodies, when that person's answers may tend to incriminate him or her in future criminal proceedings. <u>Lefkowitz v. Cunningham</u>, 431 US 801, 804-805 (1977) (privilege available in civil proceedings where the testimony might later subject the witness to criminal prosecution); <u>United States v. Balsys</u>, 524 U.S. 666, 672 (1998); <u>Kastigar v. United States</u>, 406 U.S. 441, 444-445 (1972); <u>McCarthy v. Arndstein</u>, 266 U.S. 34, 40(1924). Over a century of federal appellate opinions emphatically affirm that the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." <u>Lefkowitz v. Cunningham</u>, supra.

The privilege against self-incrimination is not limited to testimony or verbal responses to questioning, but also applies to requests for production of documents. In <u>United States v. Hubbell</u>, 530 U.S. 27 (2000), the Court reaffirmed the "act of production" doctrine. An individual can unquestionably invoke the Fifth Amendment privilege when compelled to turn over documents

that are incriminating or that may lead to inculpating evidence if the act of producing the documents themselves implies assertions of fact. It is not merely the fact that the compelled documents may contain incriminating evidence that justifies invocation of the privilege. Rather, it is the testimonial nature of production of potentially inculpatory documents that triggers the privilege because by complying with the order to produce, the individual is effectively admitting that the documents exist, were in his or her possession or control, and were authentic. Id. at 37. See also United States v. Doe, 465 US 605, 612-613 (1984) (distinguishing between the contents of the records, which are not privileged, and the act of producing the records which was a privileged act.)

While the Supreme Court has held that the Fifth Amendment privilege is purely personal and therefore not available to corporations, the Supreme Court has also opened the door for a single-member limited liability to invoke Fifth Amendment Rights. Bellis v. United States, 417 U.S. 85 (1974). Despite limiting the Fifth Amendment to "its historic function of protecting only the natural individual," the Court in *Bellis* noted that "[t]his might be a different case if it involved a *small family partnership* … or … if there [were] some *other pre-existing relationship of confidentiality* among the partners." Id. at 101. The Court then cited to *United States v. Slutsky*, a case out of the Southern District of New York holding that a two-man partnership could rely on the Fifth Amendment as a safe haven. 352 F. Supp. 1105, 1108 (S.D.N.Y. 1972). In *Slutsky*, the district court determined that "[w]hile partnership ownership [was] shared, it [was], nonetheless, personal and, consequently, the business records of [the] partnership [were] really the personal records of each of the partners… [Furthermore, the partners had] give[n] their personal attention to the day-to-day business activities of the partnership." Id. at 1107-08.

A single-member limited liability company is not the same as a corporation. *See, e.g.*, Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 705 (4th Cir. 2010) (holding that an LLC is an unincorporated association under the Class Action Fairness Act); JMTR Enters., L.L.C. v. Duchin, 42 F. Supp. 2d 87, 94 (D. Mass. 1999) ("[T]here is no justification for treating [an LLC] as a corporation"); CFM Buckley/North, LLC v. Bd. of Assessors of Greenfield, 902 N.E.2d 381, 384 (Mass. 2009) ("[An LLC] is not a corporation."); RCN-BecoCom, LLC v. Comm'r of Revenue, 820 N.E.2d 208, 216 (Mass. 2005) (holding that a statute applying to corporations did not apply to LLCs); Hurwitz v. Padden, 581 N.W.2d 359, 364 (Minn. Ct. App. 1998) (holding that LLC dissolution follows partnership principles). For more cases describing the LLC as a hybrid business entity, see also Great Lakes Chem. Corp. v. Monsanto Co., 96 F. Supp. 2d 376, 383 (D. Del. 2000); Ruggio v. Vining, 755 So. 2d 792, 795 n.2 (Fla. Dist. Ct. App. 2000); Gee v. Bullock, C.A. No. 96-2223, 1996 WL 937009, at *4 (R.I. Super. Ct. Nov. 16, 1996).

The *Bellis* exception provides the exact rationale as to why Harold L. DeYoung d/b/a DeYoung Family Zoo should be permitted to invoke the Fifth Amendment. See In re Grand Jury Subpoena Duces Tecum (Doe), where the Court determined that the *Bellis* Court contemplated that individual owners of the proverbial "Mom and Pop" stores would continue to enjoy the protection of the Fifth Amendment even though they elected to conduct business as a partnership. 605 F. Supp. 174, 178 (E.D.N.Y. 1985). If the *Bellis* Court intended to hold that no partners could ever invoke the Fifth Amendment with respect to partnership records, it could easily have said so. Id.

In this case Harold L. DeYoung is doing business as DeYoung Family Zoo, L.L.C. He is the owner. He is the only officer. He is DeYoung Family Zoo, L.L.C. Therefore, he has a right to invoke the protections afforded by the Fifth Amendment of the Constitution and therefore invokes

his right against self-incrimination. Likewise, Carrie Cramer, an individual, invokes her right against self-incrimination.

## B.  PETA's Subpoenas

PETA's motion to compel requests that the Court enter an Order:

a. "Compelling the Zoo to produce any and all documents in its possession or control that are responsive to the subpoena…."

b. "Compelling the Zoo to allow PETA to inspect the Zoo….."

c.  "Compelling the Zoo to produce a representative for deposition…."

A deposition is testimonial.  Pursuant to PETA's subpoena, the questions would concern chimpanzees which are now at DeYoung Family Zoo. Harold L. DeYoung is not a party to the underlying case. However, the underlying case concerns PETA's allegations that the chimpanzees were illegally "taken" in violation of Endangered Species Act.  PETA previously alleged that DeYoung was in violation of the Endangered Species Act.  Therefore, compelling DeYoung to testify in a deposition would violate his rights under the Fifth Amendment and expose him to the risk of criminal prosecution under the Endangered Species Act.  Likewise, Carrie Cramer should not be compelled to testify because she too has asserted her Fifth Amendment right against self-incrimination.

The "inspection" would also be testimonial.  If DeYoung is compelled to comply with PETA's Subpoena to Produce Documents, Information, or Objects and to Permit Inspection of Premises, it would be testimonial because the subpoena would require DeYoung to do the following during the inspection:

a) Divulge to PETA[3] the areas "in which the chimpanzees are or were being held for any period of time, including but not limited to indoor enclosures, outdoor enclosures, temporary holding enclosures;"

b) Divulge to PETA "those areas of the DeYoung Family Zoo that pertain to the maintenance and care of the chimpanzees, including but not limited to areas where food is stored and prepared, and places where other associated supplies such as enrichment, medicine, and equipment are kept."

c) Demonstrate for PETA's lawyers his practice and procedure for monitoring the chimpanzee's teeth and dental health care;

d) Demonstrate for PETA's lawyers his practice and procedure preparing food for the chimpanzees and feeding food to the chimpanzees;

e) Demonstrate for PETA's lawyers his practice and procedures for daily routine cleaning and housekeeping of the chimpanzees' enclosures;

f) Demonstrate for PETA's lawyers his practice and procedures recalling the chimpanzees or shifting them to particular areas within their enclosures;

g) Demonstrate for PETA's lawyers his practice and procedures for providing enrichment for the chimpanzees;

h) Demonstrate for PETA's lawyers his practice and procedures for routine daily observations and monitoring of the physical and mental health of the chimpanzees; and

i) Demonstrate for PETA's lawyers his practice and procedures for sanitizing the

---

[3] PETA's subpoena states that it intends to bring two attorneys, an expert, a photographer, and a videographer to the inspection.

enclosures of the chimpanzees.

Compelling DeYoung to permit the inspection would enable PETA to observe, photograph, and videotape DeYoung as he complies with PETA's commands in his own zoo, would violate Young's rights under the Fifth Amendment, and would expose him to the risk of criminal prosecution under the Endangered Species Act.

Likewise, the act of producing documents in response to PETA's subpoena is also testimonial. PETA's subpoena requests email correspondence, text messages, video, permits, animal health certificates, veterinary records, enrichment plans, fuel and/or toll receipts, and specifications, maps, blueprints for the enclosures housing the chimpanzees, and communications with The Cavalry Group, Mindy Patterson, or Mark Patterson relating to PETA. By producing such documents in a case such as this, an individual in Harold DeYoung's position would effectively admit that the document exists, was in his possession, and is authentic, thus exposing himself to the risk that PETA will use the document for the purpose of criminal prosecution under the Endangered Species Act.

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. is licensed by the United States Department of Agriculture. **Exhibits 3 and 6**. The USDA's website for the Animal and Plant Health Inspection Service explains that:

"Highly-trained USDA inspectors located throughout the United States conduct routine, unannounced inspections of all facilities licensed or registered under the AWA to assess these facilities compliance with AWA. Inspectors are classified as veterinary medical officers (VMOs) or Animal Care inspectors (ACIs). All VMOs have graduated from a veterinary medical college, and many have been private-practice veterinarians prior to joining USDA Animal Care. ACIs have education in the biological sciences and/or

extensive experience in the care and handling of animals. USDA Animal Care also employs veterinarians who specialize in the care of particular animal species as well as those with a specific area of animal expertise such as research or transportation."

www.aphis.usda.gov/aphis/ourfocus/animalwelfare/sa_awa/ct_awa_program_information

As the Court noted in its Memorandum and Order of November 26, 2018, the USDA transfer document as to the chimpanzees who have been moved to the DeYoung Family Zoo in Michigan indicates that they were in excellent condition when they were moved. PETA may request records from the USDA referable to DeYoung Family Zoo through a Freedom of Information Act Request.

**C. Motion to Quash**

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C and Carrie Cramer reiterate and restate that they have invoked their Fifth Amendment privilege against self-incrimination. Moreover, as non-party witnesses, pursuant to FRCP 26(c) and FRCP 45(d), DeYoung and Cramer respectfully request that the Court quash PETA's subpoenas and enter a protective order. More specifically, DeYoung and Cramer request that the Court quash the subpoena for deposition, quash the subpoena referable to the production of documents, and quash the subpoena referable to the inspection of DeYoung Family Zoo.

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction." Fed. R. Civ. P. 45(c)(1). A court "must quash or modify a subpoena that . . . subjects a person to undue burden." *Id.* Some courts utilize a six-factor test for determining if an undue burden exists: "'(1) relevance of the information

requested; (2) the need of the party for the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.'" *Glenford Yellow Robe v. Allender,* No. 09-5040-JLV, 2010 U.S. Dist. LEXIS 43242, 2010 WL 1780266, at *5 (D.S.D. Apr. 30, 2010) (quoting *Jade Trading, LLC v. United States,* 65 Fed. Cl. 188, 190 (Fed. Cl. 2005)). [**9] The party moving to quash the subpoena bears the burden to prove that the subpoena would create an undue burden. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2459 (3d ed. 2008).

When a nonparty is subpoenaed, the court is particularly mindful of Rule 45's undue burden and expense cautions. Wright & Miller, at § 2459; *see also Alberts v. HCA Inc.,* 405 B.R. 498, 503 (D.D.C. 2009) (reasoning that a "blatant abuse of the subpoena power is a common thread running through decisions in which sanctions have been awarded under Rule 45(c)(1)," such as seeking information from a nonparty to use in a different court action). To protect a nonparty from undue burden or expense, the court can modify the subpoena's scope or shift the financial burden of retrieving the information to the requesting party. Wright & Miller, at § 2459. If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena. *See In re Cantrell,* No. 09-mc-0158-CV-W-GAF, 2009 U.S. Dist. LEXIS 37344, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009) (quashing a nonparty document subpoena because a party in the action had the information).

In this case, the Court has already noted that the chimpanzees were in excellent condition when they were transferred by Casey and MPH to the DeYoung Family Zoo. This was confirmed by the USDA transfer document which is already an exhibit in the Court's file. Harold L. DeYoung

d/b/a DeYoung Family Zoo, L.L.C. is licensed by the USDA and he is therefore subject to unannounced, routine inspections by USDA veterinarians. This begs the question. At what point is enough enough? The burdens imposed by PETA's subpoenas, on their face, is overwhelming. The breadth of the requests is burdensome. Harold DeYoung is not a party to the underlying case. Carrie Cramer is not a party to the underlying case. And yet, PETA commands – and is asking the Court to compel – a non-party to allow two (2) PETA lawyers, a PETA expert, a PETA photographer, and a PETA videographer, to enter DeYoung's facility in Michigan, ask questions, expect answers, give directions to DeYoung with the expectation that he will do what they direct him to do, while taking notes, taking photographs, videotaping, and gathering "evidence" which PETA purportedly intends to use in its case against another facility in the state of Missouri. To the extent that the current condition of the chimpanzees is relevant, the question can be answered through USDA documents through a Freedom of Information Act request.

## CONCLUSION

WHEREFORE, Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C and Carrie Cramer pray:

A.  That the Court enter an Order protecting them from being compelled to testify as it is their constitutional right to invoke the Fifth and Fourteenth Amendments to the United States Constitution;

B.  That the Court enter an Order denying PETA's Motion to Compel Compliance with the Subpoenas;

C.  That the Court grant Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C.'s Motion to Quash PETA's subpoenas for inspection, production and deposition;

D.  That the Court grant Carrie Cramer's Motion to Quash PETA's subpoenas for inspection, production and deposition; and

E.  That the Court enter a Protective Order pursuant to FRCP 26 to further protect Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer.

Respectfully submitted,

**MCCHESNEY & ORTWERTH, L.L.C.**


 **/s/ Brian S. McChesney**
**Brian S. McChesney #40545MO**
***bmcchesney@gatewayinjurylaw.com***
**1922 Chouteau Avenue**
**St. Louis, Missouri 63103**
**(314) 584-4500**
**(314) 584-4501 facsimile**
***Attorney for DeYoung Family Zoo***

**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 10th day of January, 2019.

James P. Martin
***jmartin@polsinelli.com***
POLSINELLI, PC
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
***Attorney for Movant***
***People for the Ethical Treatment***
***of Animals, Inc.***

Jared S. Goodman
***JaredG@petaf.org***
PETA FOUNDATION
2154 W. Sunset Blvd.
Los Angeles, CA 90026
***Attorney for Movant***
***People for the Ethical Treatment***
***of Animals, Inc.***

**/s/ Brian S. McChesney**