# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) |
| Movant, | ) ) ) |
| v. | ) ) |
| DEYOUNG FAMILY ZOO | ) ) ) |
| Respondent. | ) ) ) ) ) |

Case No. 4:18-mc-00798-CDP

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS AND OPPOSITION TO DEFENDANT'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

Movant People for the Ethical Treatment of Animals, Inc. ("PETA"), pursuant to Local Rule 7-4.01(C), submits this reply to Respondent DeYoung Family Zoo's Response in Opposition to Movant's Motion to Compel Compliance with Subpoenas Including Motion to Quash and for Protective Order [ECF No. 18 ("Opposition")] and in further support of PETA's Motion to Compel Compliance with Subpoenas [ECF No. 1 ("Motion")].

DeYoung Family Zoo, LLC (the "Zoo") is a fictitious entity and, as such, has no Fifth Amendment right to assert. Nor can its custodian, to whom the subpoenas were addressed, assert this right. The Zoo's written objections to the subpoenas similarly fail to excuse its compliance therewith. The Zoo ignores that it possesses chimpanzees whose conditions constitute central evidence in underlying Endangered Species Act ("ESA") litigation, and that PETA cannot obtain that evidence from any other source. Further, the Zoo never disputes PETA's arguments that the subpoenas are narrowly tailored and seek only information that is relevant—and critical—to

PETA's case. Indeed, the Zoo does not even attempt to meet its burden to obtain a protective order *at all*. Accordingly, this Court should grant PETA's Motion and deny the Zoo's Motion to Quash and for Protective Order.

**Background**

The Motion arises in connection with a transfer of chimpanzees from Missouri Primate Foundation ("MPF") to the Zoo.

Previously, the Zoo had only two chimpanzees, and it held them in isolation from any other member of their species. On October 28, 2016, PETA served on the Zoo notice of its intent to file suit under the ESA due, in large part, to that isolation. [Decl. of Jared Goodman (January 17, 2019) ("Goodman Decl."), ¶ 2 & Ex. A]. After receiving this letter, the Zoo—represented by the same counsel as MPF, Kurtis B. Reeg—obtained chimpanzees from MPF and then, just as MPF did in the underlying litigation, filed a preemptive lawsuit against PETA. The Zoo's complaint was virtually identical to MPF's complaint against PETA, which was filed just days later and which this Court dismissed in its entirety. *Compare MPF et al. v. PETA et al.*, Case No. 4:16-CV-2163-CDP (the "*MPF Litigation*"), ECF No. 82-1 *with MPF Litigation*, ECF No. 1.

PETA informed the Zoo it would not sue under the ESA because the Zoo "may have addressed ESA violations" about the chimpanzees' social grouping when it acquired the MPF's chimpanzees[1]—PETA could not independently verify whether or not the issues had been addressed because the chimpanzees were not on public display at the Zoo. [Goodman Decl. ¶ 3 & Ex. B]. The Zoo then dismissed its case. *MPF Litigation*, ECF No. 82-2 ("[B]ecause Defendants

---

[1] The Zoo and/or MPF completed a USDA form signed December 22, 2017, to document the chimpanzees' transfer. [*MPF Litigation*, ECF No. 82-3.] The Zoo has not disputed that it and/or the MPF completed the form themselves and that it does not reflect any independent assessment of the chimpanzees' condition.

2

PETA and McDowell have withdrawn their Notice of Intent to Sue Letter dated October 28, 2016, Plaintiffs . . . voluntarily dismiss this action[.]").

The subpoenas here relate to Connie Casey's and MPF's care of those and two subsequently transferred chimpanzees, whom Casey asserts PETA can inspect and are no longer held in conditions that violate the ESA. [Motion, at 8-9.] As this Court has noted, the chimpanzees' current care and conditions remain at issue in the case, and "there is no evidence about the conditions under which they are currently held" because "PETA has been unable to obtain the evidence." [*Id.*]

## Discussion

I. **The Zoo Does Not Have the Asserted Fifth Amendment Rights**

A. <u>The Fifth Amendment Does Not Apply to Limited Liability Companies of Any Size</u>

The Fifth Amendment is a personal right—collective entities, of any size, cannot claim the privilege against self-incrimination. *Bank of Am., N.A. v. Roberts*, No. 4:12-CV-609, 2014 WL 1259779, at *4 (E.D. Mo. Mar. 26, 2014). This includes limited liability companies. *In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 526-27 (9th Cir. 2018). Therefore, neither the Zoo nor its custodian of records can assert its Fifth Amendment rights.

Under the "collective entity doctrine," a collective entity's record custodians cannot invoke the Fifth Amendment against producing documents "'even if th[o]se records might incriminate him personally'" because "'artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand.'" *Bank of Am.*, 2014 WL 1259779, at *4. (quoting *Braswell v. United States,* 487 U.S. 99, 110 (1988)) (alterations omitted). The doctrine applies "regardless of how small the corporation may be, as well as [to] labor unions, partnerships, and trusts." *Id.* (internal quotation marks and citations omitted).

The collective entity doctrine also applies to limited liability companies like the one the Zoo claims to be.[2] In *In re Twelve Grand Jury Subpoenas*, 908 F.3d 525 (9th Cir. 2018), the Ninth Circuit noted that this is a clearly settled point. There, the court affirmed a district court's contempt order against the custodian of several "small, closely held" *limited liability companies* and corporations, for which the custodian "is either the sole shareholder or sole employee, or is solely responsible for accounting and record keeping." *Id.* at 526-27.

> Appellant argues that it makes little sense to apply the collective entity doctrine to small or family-owned corporations or LLCs that operate like sole proprietorships. But *by choosing to operate his businesses as a corporation or LLC and **not** as a sole proprietorship, Appellant knowingly sought out the benefits of these forms. Having done so, he cannot now be shielded from its costs.* . . .
>
> All of our sister circuits to consider this issue have reached the same conclusion. *See In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 263 (3d Cir. 2015) ("Appellants have advanced no persuasive rationale as to why the reasoning of *Bellis* and *Braswell* does not apply to one-person corporations."); *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010) ("'There simply is no situation' in which a corporation can avail itself of the Fifth Amendment privilege." (quoting *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985))); *Amato v. United States*, 450 F.3d 46, 51, 52 (1st Cir. 2006) (reaffirming that "production, including implied authentication, can be required of a corporation through a corporate officer regardless of the potential for self-incrimination," and stating that "the act-of-production doctrine is not an exception to the collective-entity doctrine even when the corporate custodian is the corporation's sole shareholder, officer and employee" (citing *In re Grand Jury Proceedings*, 838 F.2d 624, 626–27 (1st Cir. 1988))); *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992) (holding that "the district court correctly answered the question left open in *Braswell*" by concluding that a one-person corporation could not assert the Fifth Amendment privilege). We now join them in concluding that *there are no circumstances under which a records custodian may resist a*

---

[2] The Zoo asserts that Harold L. DeYoung is the sole owner and officer of the Zoo. Opp'n, 3-4. Ms. Carrie Cramer provided a declaration saying she is not an "officer" of the zoo. [Decl. of Carrie Cramer, 1, ECF No. 18-4.] However, Ms. Cramer was the Zoo's counsel's point of contact when PETA was negotiating a non-disclosure agreement and, according to the Zoo's counsel, her absence required the parties to halt negotiations. [Decl. of Jared Goodman, ¶ 15 & Ex. L, ECF No. 2.] Moreover, the Zoo has other employees, at least one of whom reported to the process server that she was instructed that she not authorized not to accept service of the subpoenas. [Decl. of Jared Goodman, ¶ 10, ECF No. 2.]

> *subpoena for a collective entity's records on Fifth Amendment grounds.* Appellant's challenge to the district court's contempt order therefore fails.

*Id.* at 530–31 (extra spaces and alterations omitted) (emphases added).

The cases the Zoo cites are do not redeem its argument. In *Bellis v. United States*, 417 U.S. 85, 100 (1974), the Supreme Court held that "[i]t is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." Likewise, in *In re Grand Jury Subpoena Duces Tecum (Doe)*, 605 F. Supp. 174 (E.D.N.Y. 1985), the court noted that the "privilege against self-incrimination is purely personal. It is not available to individuals possessing records of a corporation in a representative capacity, even if that individual is the sole shareholder of the corporation whose records are subpoenaed." *Id.* at 178 (citations omitted). *United States v. Slutsky*, 352 F. Supp. 1105 (S.D.N.Y. 1972), specifically related to partnerships, is recognized as likely "anomalous," *see* Grand Jury Law and Practice § 6:14 (2d ed.), and to the extent that the Zoo wishes to apply it to LLC's, has been clearly rendered inapplicable by a more recent Second Circuit case, *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155 (2d Cir. 2010). There, the court affirmed a contempt order against the sole shareholder, officer and employee of certain companies even though he was the only individual capable of providing the records because "a one-person corporation cannot avail itself of the Fifth Amendment." *Id.* at 158.[3]

As a limited liability company—indeed, "a corporation" that was a *co-plaintiff* with "HAROLD DEYOUNG, individually," in their lawsuit against PETA [ECF No. 18-5]—the Zoo cannot claim the privilege against self-incrimination to prevent document production, nor can its

---

[3] The Zoo also cites to other cases for the general proposition that limited liability companies differ from corporations, including under state statutes, for tax purposes, and for dissolution. All of these propositions are entirely irrelevant to the instant, clearly-decided issue. Opp'n, 8.

custodian of records. As discussed further below, even if the Zoo could assert the privilege, it does not apply to much of the discovery that PETA seeks.

B.  A Site Inspections Is Not a "Compulsion" for Fifth Amendment Purposes

Even assuming that the Zoo could assert any privilege against self-incrimination, the subpoenas' demand for an inspection of the facility as it relates to the chimpanzees is not testimonial and therefore is not covered by the Fifth Amendment.

"It is the 'extortion of information from the accused,' the attempt to force him to 'disclose the contents of his own mind' that implicates the Self–Incrimination Clause." *Doe v. United States*, 487 U.S. 201, 211 (1988) (citations omitted). It is instructive that the Fifth Amendment does not protect against search warrants, which are conceptually the same as the subpoenaed inspection. In *Andresen v. Maryland*, 427 U.S. 463 (1976), law enforcement searched sole practitioner attorney Andresen's office, seized his business records, and used them at trial. Andresen objected on Fifth Amendment grounds, but the Court held "that the search of an individual's office for business records, their seizure, and subsequent introduction into evidence do not offend the Fifth Amendment's proscription that '(n)o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Id.* at 477 (alterations in original). This was because Andresen "was not asked to say or to do anything." *Id.* at 473. Rather, law enforcement searched for and seized the records itself, and "[a]ny compulsion of petitioner to speak, other than the inherent psychological pressure to respond at trial to unfavorable evidence, was not present." *Id.*; *see also United States v. Taylor*, No. P-00-CR-259, 2000 WL 33348797, at *2 (W.D. Tex. Oct. 27, 2000) ("The Supreme Court has held that a citizen may not suppress a valid search warrant on Fifth Amendment grounds." (citing *Andresen,* 427 U.S. at 477)).

The Zoo cannot use the Fifth Amendment to shield itself against an order permitting PETA to inspect its property, just as it could not stop law enforcement from completing a search warrant, because there is no Fifth Amendment "compulsion" to speak at stake.

      C.  <u>The Foregone Conclusion Doctrine Requires Disclosure of Certain Records</u>

Even if aspects of the Zoo's responses to the subpoenas were testimonial, the Zoo should be compelled to comply with them because the chimpanzees' presence at the Zoo is a foregone conclusion.

There are no Fifth Amendment protections against production when the "existence and location of the papers are a foregone conclusion and the [subpoenaed party] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers[.]" *United States v. Teeple*, 286 F.3d 1047, 1050 (8th Cir. 2002) (quoting *United States v. Fisher*, 425 U.S. 391, 411 (1976)). Thus, a tax protestor had to provide documents to the IRS because (1) the IRS already knew he had and controlled certain business records in existence, (2) he had explicitly or implicitly admitted where the documents were, and (3) the IRS could authenticate them without referencing his producing them because he had previously testified about them and they could be authenticated under Federal Rule of Evidence 901(b)(4). *Id.* at 1050-51. This doctrine applies to physical evidence as well. *See, e.g., People v. Kimes*, 37 A.D.3d 1, 25 (N.Y. App. Div. 2006) (holding subpoena for duffel bag containing handgun was not a violation of the Fifth Amendment under the foregone doctrine rule because law enforcement knew of the existence and location of the bag).

Here, the "testimony" at issue from a site inspection is also a foregone conclusion. The Zoo admits that the chimpanzees exist, that it has control over them, and that they are at the Zoo. Opp'n, 5 ("Some of the chimpanzees were transferred by Casey and MPF to the DeYoung Family Zoo."), 13 (discussing "the chimpanzees . . . [who] were transferred by Casey and MPH [sic] to the

DeYoung Family Zoo"). And as recently as October 3, 2018, the Zoo admitted it still had the chimpanzees in particular enclosures. [Decl. of Jared Goodman, ¶ 16, ECF No. 2]. PETA can also authenticate information about the chimpanzees without referencing the Zoo's producing them, as chimpanzees have a distinctive appearance and the chimpanzees at issue could be identified by individuals familiar with the chimpanzees (including PETA's co-plaintiff in the MPF Litigation) and by comparison to existing photos and video of them that has been produced in discovery in that litigation. *See* Federal Rule of Evidence 901(b)(1), (4). Therefore, the existence, possession, and authenticity of the chimpanzees is a foregone conclusion, and their production by site inspection would not be protected by the Fifth Amendment.

> D. The Zoo Must Provide All Documents and Take All Actions Required Under Applicable Laws

When regulations require a subpoenaed party to permit inspections of its records by a government authority, and when those same records are subpoenaed in the course of litigation, the records' "custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection." *Baltimore City Dep't of Social Servs. v. Bouknight*, 493 U.S. 549, 558 (1990) (quoting *Wilson v. United States*, 221 U.S. 361, 382 (1911)). More specifically, "[w]hen a person assumes control over items that are the legitimate object of the government's noncriminal regulatory powers, the ability to invoke the privilege is reduced." *Id.* at 558.

Under the required record doctrine, a person cannot claim Fifth Amendment rights against producing documents or items that laws require them to keep when "(1) the purpose of the recordkeeping is essentially regulatory, rather than criminal; (2) the records contain the type of information that the regulated party would ordinarily keep; and (3) the records have assumed public aspects rendering them analogous to public documents." *In re Grand Jury Subpoena*, 21

F.3d 226, 228 (8th Cir. 1994) (reversing district court's order quashing subpoena for documents an automobile company was required to keep under state and federal law). "[A] recordkeeping requirement is 'essentially regulatory' if it is imposed in an essentially noncriminal and regulatory area of inquiry and is not directed to a selective group inherently suspect of criminal activity." *United States v. Under Seal*, 737 F.3d 330, 334 (4th Cir. 2013) (brackets and internal quotation marks omitted). "[I]f the government's purpose in imposing the regulatory scheme is essentially regulatory, then it necessarily has some 'public aspects' sufficient to satisfy the third prong of the required records doctrine." *Id.* at 337; *accord In re M.H.*, 648 F.3d 1067, 1077 (9th Cir. 2011); *Donovan v. Mehlenbacher*, 652 F.2d 228, 231 (2d Cir. 1981); *United States v. LaPage*, 441 F. Supp. 824, 826, 826 n.1 (N.D.N.Y. 1977) (requiring cattlemen to produce "all documents, notes and communications in regard to important of cattle from Canada" because New York regulation required certain documents to be kept).

In *Baltimore City Department of Social Services v. Bouknight*, 493 U.S. at 559, a mother took custody of a child subject to a custodial order's conditions, including requirements that she cooperate with a regulatory regime, such as "the incident obligation to permit inspection." The purpose was regulatory, not criminal, because "[p]ersons who care for children pursuant to a custody order, and who may be subject to a request for access to the child, are hardly a selective group inherently suspect of criminal activities," *id.*, even though there could be criminal aspects under the law, *id.* at 560-61.

Just as in *Bouknight*, the Zoo voluntarily agreed to take the chimpanzees subject to corresponding federal regulations. *See id.* at 558 ("When a person assumes control over items that are the legitimate object of the government's noncriminal regulatory powers, the ability to invoke the privilege is reduced."). The Zoo admits that it "is licensed by the United States Department of

9

Agriculture," Opp'n, 11, and various Animal Welfare Act ("AWA") regulations therefore apply. For instance, the Zoo acknowledges that it is subject to "routine, unannounced inspections" by the USDA's Animal and Plant Health Inspection Service ("APHIS"). *Id.*; *accord.* 9 C.F.R. §§ 2.126(a)(1) (permitting the APHIS to "inspect and photograph the facilities, property and animals, as APHIS officials consider necessary to enforce the provisions of the [AWA]" and its corresponding regulations). The AWA regulations cover, among other things, the chimpanzees' veterinary care, identifying information, transportation, food, water, and enclosures, 9 C.F.R. §§ 2.40-2.55, 3.75-3.92. They are civil in nature because animal exhibitors "are hardly a selective group inherently suspect of criminal activities." *Bouknight* at 559. The required production therefore has sufficient public aspects. *Under Seal*, 737 F.3d at 337. Accordingly, because the Zoo accepted "the incident obligation to permit [APHIS's] inspection," it has no Fifth Amendment privilege against PETA's site inspection. *See Bouknight*, 493 U.S. at 559.

The Zoo also agreed to comply with APHIS's specific record-keeping requirements. *See, e.g.*, 9 C.F.R. §§ 2.40 (exhibitors must maintain "a written program of veterinary care"); 3.81 ("[A]n appropriate plan for environment enhancement adequate to promote the psychological well-being of nonhuman primates . . . must be made available to APHIS upon request"). They must "*furnish to any APHIS official any information concerning the business of the . . . exhibitor . . .* which the APHIS official may request in connection with the enforcement of the provisions of the" AWA or its regulations. *Id.* § 2.125 (emphasis added). And more specifically, the Zoo must also provide APHIS with all records they are required to keep on request. *Id.* § 2.126(a). As such, the Zoo must also provide PETA with all records it requested in the subpoena under the required records doctrine.

## II. The Zoo Does Not Specifically Dispute the Necessity, Appropriateness, or Scope of the Subpoena

"'The burden of proving the subpoena poses an undue burden rests with the party moving to quash and is a heavy one,'" *Forrest Crompton v. 5-hour Energy*, No. 4:16-MC-00348 JAR, 2016 WL 4061881, at *3 (E.D. Mo. July 29, 2016) (citation omitted), A non-party seeking to quash a subpoena must "specif[y] the time or resources necessary to comply or explain[] how compliance would actually be burdensome." *Id.* (citing 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.51[4] (3d ed. 2009) ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.")). "[S]imply mak[ing] the bare assertion that it is burdensome for it to comply" is insufficient. *Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998).

The Zoo has wholly failed to meet its burden. It merely copies its boilerplate objections, Opp'n, 2-3, misrepresents the records PETA could obtain from the USDA, and repeats the subpoena's requirements at a site inspection, *id.* at 14. Mostly, the Zoo relies on its repeated and unsupported refrain that "the chimpanzees were in excellent condition" when transferred. *Id.* at 13.

The Zoo does not even discuss PETA's showing that the evidence is relevant—even central—to its case, *Motion* at 8-9, 15-16, that the subpoenas are narrowly tailored, *id.* at 15-16, or this Court's acknowledgment that PETA could not obtain the evidence in the underlying litigation, *id.* at 4, 11. Specifically, in PETA's deposition of Connie Casey, Casey repeatedly refused to answer questions about the wellbeing of the animals now housed at the Zoo and directed inquiries to the Zoo itself. [Depo. of Connie Braun Casey, 221:7-222:2, Goodman Decl. ¶ 4 & Ex. C. (answering variations of "You'll have to talk to DeYoung Zoo" eight times when asked about

the care of the chimpanzee Cooper and admitting the answers would be the same if asked about the four other chimpanzees transferred—Kirby, Daisy, KK or Coby).]

With respect to the requested records, the Zoo merely offers, without support or any further discussion, that "PETA may request records from the USDA referable to DeYoung Family Zoo through a Freedom of Information Act Request." Opp'n, 12. PETA cannot get the subpoenaed information through a Freedom of Information Act request to the USDA because: (1) while, as discussed above, the AWA regulations require the Zoo to *maintain* certain records and make them available for inspection, they do not require the Zoo to provide copies of the records to the agency (and the agency does not collect such records), so they are unavailable through a records request; (2) the USDA administers the AWA, not the ESA; and (3) the USDA's inspections and enforcement of even the minimal standards of the AWA are notoriously insufficient, and thus its documentation of those inspections is as well.

The United States Fish and Wildlife Service, not the USDA, administers the ESA for terrestrial species. *Nat'l Wildlife Fed'n v. FEMA*, 345 F. Supp. 2d 1151, 1167 (W.D. Wash. 2004) (citing 50 C.F.R. § 402.01(b)). Rather, the USDA inspects exhibitors like the Zoo under the AWA, which applies to all exhibited animals and has lesser standards than the ESA. *See MPF Litigation*, ECF No. 56, 7-9 (recognizing that the ESA provides heightened protections).

Moreover, the USDA's own Office of Inspector General (OIG) has repeatedly condemned the agency for its inadequate enforcement of the AWA. *See* Office of Inspector Gen., U.S. Dep't of Agric., *Animal and Plant Health Inspection Service Oversight of Research Facilities*, Audit No. 33601-0001-41, at 1–3 (Dec. 2014), https://www.usda.gov/oig/webdocs/33601-0001-41.pdf (summarizing a series of audit findings on AWA enforcement). Specifically, OIG found that they do not "adequately describe violations in their inspection reports or support violations with

photos." Office of Inspector Gen., U.S. Dep't of Agric., *Audit Report 33002-4-SF, Animal and Plant Health Inspection Service Animal Care Program Inspections of Problematic Dealers* 21 (May 2010), https://www.usda.gov/oig/webdocs/33002-4-SF.pdf. Moreover, the inspectors do not even note the violations that do exist. Office of Inspector Gen., U.S. Dep't of Agric., *Audit Report 33601-10-CH, Controls over APHIS Licensing of Animal Exhibitors* 6 (July 2010), https://www.usda.gov/oig/webdocs/33601-10-CH.pdf ("During our audit we found Animal Care inspectors determined 15 of the 31 facilities to be adequate even when there were potentially unsafe conditions present."). The USDA's inadequate inspection reports cannot possibly provide the information PETA seeks about the chimpanzees. Thus, PETA cannot, as the Zoo contends, rely on "USDA documents [obtained] through a Freedom of Information Act request." Opp'n, 14.

And as to the site inspection, the Zoo essentially repeats portions of PETA's subpoena and does not address PETA's arguments as to the inspection's necessity, relevance, or narrow-tailoring. Such a minimal showing does not even approach carrying the Zoo's heavy burden.

## Conclusion

The subpoenas at issue are directed to the Zoo's custodian of records. Because the Zoo is an entity, it does not have the asserted rights against self-incrimination. Moreover, even if the Zoo did have such rights with respect only to discovery deemed testimonial, they would be further limited substantially by the foregone conclusion and required record doctrines. Finally, the Zoo failed to carry its burden to quash the subpoenas or for a protective order. Therefore, this Court should grant PETA's Motion to Compel and deny the Zoo's Motion to Quash and for Protection Order.

Dated: January 17, 2019             Respectfully submitted,


/s/ Jared S. Goodman

JARED S. GOODMAN (#1011876DC)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Movants*

**Certificate of Service**

      I certify that on January 17, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to all counsel of record.

                                                                /s/ Jared S. Goodman