IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) |
| Movant, | ) ) Case No: 4:18-mc-00798-CDP |
| v. | ) ) ) |
| DEYOUNG FAMILY ZOO, | ) ) |
| Respondent. | ) |

### DEYOUNG'S REPLY TO PETA'S OPPOSITION TO DEYOUNG'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer, [collectively "DeYoung] offer the following Reply to PETA'S Opposition [ECF # 19] to DeYoung's Motion to Quash and for Protective Order. This matter concerns PETA'S motion to compel compliance with subpoenas issued in the underlying case of *Missouri Primate Foundation et al. v. People for the Ethical Treatment of Animals, Inc. et al., Case No. 4:16-CV-2163-CDP*. Hereinafter, the underlying counterclaim in *Missouri Primate Foundation et al. v. People for the Ethical Treatment of Animals, Inc. et al., Case No. 4:16-CV-2163-CDP* shall be referred to as "underlying counterclaim." PETA's Motion to Compel Compliance with Subpoenas [ECF #1] shall be referred as "Motion to Compel." PETA's Opposition to DeYoung's Motion to Quah and for Protective Order [ECF # 19] shall be referred to as "Opposition".

Harold L. DeYoung d/b/a DeYoung Family Zoo and Carrie Cramer restate and reiterate that they are invoking their Fifth and Fourteenth Amendment rights, thus invoking their right against self-incrimination.

## BACKGROUND

As the Court will recall, PETA served Harold DeYoung and Carrie Cramer with subpoenas on June 20, 2018. DeYoung was served with a Subpoena to Produce Documents, Information, or Objects and to Permit Inspection of Premises. Cramer was served with a Subpoena to Testify at a Deposition in a Civil Action. Harold DeYoung is not a party to the underlying case. Carrie Cramer is not a party to the underlying case. Nor is the DeYoung Family Zoo a party to the underlying case. Cramer is DeYoung's significant other and fiancé.

## DEYOUNG'S OBJECTIONS

PETA's Opposition [ECF # 19] argues that DeYoung "does not specifically dispute the necessity, appropriateness, or scope of the subpoena." **ECF 19, page 11.** PETA also argues that DeYoung did not discuss [or dispute] the evidence is relevant – even central --- to its case." **Id.** However, PETA's arguments are false. On June 26, 2018, DeYoung's attorney served PETA's attorney with written objections to the subpoenas.[1] Because DeYoung made a timely objection[2], Rule 45(d)(2)(b) applies: **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance. In this case, if the court denies PETA's motion to compel, that is the end it.

---

[1] ECF 18, Exhibit 8.
[2] PETA's lawyer agreed to post-pone the deposition until after the inspection, which never incurred.

## MULTIPLE FACTOR ANALYSIS

PETA argues that its subpoenas seek relevant information from DeYoung which is necessary to sustain its burden proof in its underlying counterclaim against Casey and MPF. However, relevance is but one of the factors to be considered in the analysis. The factors to be considered in in any undue burden analysis include relevance, need of party for documents, whether request is cumulative and duplicative, time and expense required to comply with subpoena, and importance of issues at stake in litigation. <u>Linder v. Calero-Portocarrero, 183 FRD 314 (D.D.C. 1998)</u>, aff'd, <u>251 F3d 178, 346 US App DC 117, 49 Fed R Serv 3d (Callaghan) 757 (D.C. Cir. 2001)</u>. Whether subpoena imposes undue burden upon witness is case-specific inquiry that turns on such factors as relevance, need of party for documents, breadth of document request, time period covered by request, particularity with which documents are described, and burden imposed. <u>American Elec. Power Co. v. United States, 191 FRD 132, 85 AFTR2d (RIA) 2000-345 (S.D. Ohio 1999)</u>. Moreover, Courts are particularly cautious when a non-party such as DeYoung is the target of the subpoena.

## PETA'S UNDERLYING COUNTERCLAIM

The Court's Memorandum and Order [ECF 56] of March 22, 2018 [underlying claim] provides a thorough analysis of PETA' allegations against Casey and MPF:

> "PETA's counterclaim alleges that MPF: fails to meet the chimps' fundamental social, physical, and psychological needs; confines them to a dangerous and unsanitary environment; restricts them to a dangerously unhealthy diet; and fails to provide them with adequate preventative and emergency veterinary care. PETA contends that MPF has failed to comply with even minimal animal-husbandry requirements established by the United States Department of Agriculture

3

(USDA), which administers the Animal Welfare Act. The counterclaim states that MPF's actions cause the chimpanzees psychological harm, prevent them from carrying out their natural behaviors, and expose them to a significant risk of physical illness and injury." **[Doc 56, Page 3]**

"PETA has alleged that conditions at the MPF have deprived the chimpanzees of adequate social groups, space, and psychological stimulation, putting them at risk of and causing physical and psychological injury, such as deteriorated cardiovascular and musculoskeletal health, stress, anxiety and depression. The counterclaim also alleges that the chimpanzees were denied a sanitary environment, proper ventilation, a healthy diet, and adequate veterinary care." **[Doc 56, Page 10].**

PETA's underlying counterclaim alleges that Connie Casey [and MPF] violated the Endangered Species Act and failed to meet the regulatory standards applicable under the Animal Welfare Act. PETA'S allegations focus entirely on Casey's facility and her treatment of the chimpanzees in her facility. However, PETA's underlying counterclaim does not mention DeYoung. Nor does PETA's counterclaim make allegations referable to DeYoung's facility. Nor does PETA'S counterclaim allege that DeYoung has mistreatment of the chimpanzees. Again, DeYoung isn't a party to the case.

## **RELEVANCE**

PETA'S Opposition insists that its subpoenas seek relevant information from DeYoung and that its subpoenas are "narrowly tailored" so as not to be overreaching. [ECF 19, pare 11]. However, PETA's argument is disingenuous, hypocritical, and a distortion of the Court's statements.

PETA's Motion to Compel consists of 17 paragraphs on 4 pages of paper. [ECF 1]

Only two of those paragraphs – paragraph 5 and 6 – purport to explain why the information PETA is seeking from DeYoung is relevant to the allegations against Casey and MPF in the underlying case. And both of those paragraphs – 5 and 6 – are gross distortions of statements allegedly made by the Court.

> "5. The Eastern District of Missouri has found that the current conditions of the five chimpanzees who were transferred to the Zoo remain relevant to Plaintiffs' claims. [ECF No. 56.] Indeed, the physical condition of the chimpanzees remains central to Plaintiffs' "take" claims both in relation to the manner in which they were held by Defendants; and to whether the transfers brought about any further "take" by Defendants.
>
> "6. The Eastern District of Missouri has further acknowledged "there is no evidence about the conditions under which they are currently held" because "PETA has been unable to obtain the evidence." [ECF No. 132.]"

PETA's statement in Paragraph 5 is false. ECF No. 56 is the Court's Memorandum and Order in *Case No. 4:16-CV-2163-CDP* which denied Casey's motion to dismiss PETA's counterclaim. Exhibit A. The Court's Memorandum and Order consists of 13 pages which include a review of the factual and procedural background of the of the underlying case, as well as a discussion of the applicable law. Id. However, the Court's Memorandum and Order makes no mention of "the five chimpanzees[3] who were transferred to the Zoo." Id. Nor did the Court's Memorandum and Order say that the current conditions of the five chimpanzees remain relevant. Id. The Memorandum and Order makes no mention of the five chimpanzees[4] and no mention of DeYoung Family

---

[3] The chimpanzees were transferred by Casey to DeYoung Family Zoo.
[4] The Court briefly discussed Sawyer's chimpanzee, known as Joey.

5

Zoo.[5] Id.

PETA's statement in paragraph 6 takes excerpts from 2 different sentences and twists them together to fit PETA's narrative. ECF 132 was a Court's order which addressed several issues and denied PETA's spoliation claim against Sawyer. In paragraph 6 of PETA's motion to compel, PETA splices these excerpts to suggest that the Court was rendering an opinion referable to the chimpanzees at the DeYoung Zoo. However, that simply isn't the case. Reading the entire excerpt from the Court's order shows that the Court was merely explaining its decision referable to the spoliation claim against Sawyer:

> "There is no evidence that any of the chimpanzees have been destroyed. The USDA transfer document as to some of the chimpanzees who have been moved to the DeYoung Family Zoo in Michigan indicates that they were in excellent condition when they were moved. There are factual disputes about exactly where all of the chimpanzees are, and there is no evidence about the conditions under which they are currently being held. Because Casey's issues with her prior counsel prevented discovery and inspection thus far, and because Sawyer has refused to testify about the location of his animal, PETA has been unable to obtain the evidence to show spoliation." [ECF 132, Page 4].

**UNDUE BURDEN**

There is no need for DeYoung and Cramer to restate and reiterate the arguments set forth in their opposition to PETA's motion to compel, which included their motion to quash and for protection order. On their face, it's apparent that PETA is using these

subpoenas to gather information from DeYoung for the purposes of suing DeYoung. For example, PETA's subpoena for the site inspection commands DeYoung to allow PETA lawyers, an expert, a photographer and videographer onto its premises; divulge to PETA the areas "in which the chimpanzees are or were being held for any period of time, including but not limited to indoor enclosures, outdoor enclosures, temporary holding enclosures;" divulge to PETA "those areas of the DeYoung Family Zoo that pertain to the maintenance and care of the chimpanzees, including but not limited to areas where food is stored and prepared, and places where other associated supplies such as enrichment, medicine, and equipment are kept; demonstrate for PETA's lawyers his practice and procedure for monitoring the chimpanzee's teeth and dental health care; demonstrate for PETA's lawyers his practice and procedure preparing food for the chimpanzees and feeding food to the chimpanzees; demonstrate for PETA's lawyers his practice and procedures for daily routine cleaning and housekeeping of the chimpanzees' enclosures; demonstrate for PETA's lawyers his practice and procedures recalling the chimpanzees or shifting them to particular areas within their enclosures; demonstrate for PETA's lawyers his practice and procedures for providing enrichment for the chimpanzees; demonstrate for PETA's lawyers his practice and procedures for routine daily observations and monitoring of the physical and mental health of the chimpanzees; and demonstrate for PETA's lawyers his practice and procedures for sanitizing the enclosures of the chimpanzees. These requests are absurd and have absolutely no relevance to the issues raised by PETA in the underlying claim against Casey and MPF. More to the point, this information won't help the Court answer the questions of fact referable to Casey's facility. Nor will it help the Court answer the questions of fact referable to Casey's treatment of the chimpanzees.

If PETA wants to know whether the chimpanzees are in excellent health, PETA can find the answer to that question the USDA. In its counterclaim against Casey and MPF in the underlying case, PETA repeatedly referenced the USDA, and USDA findings, to support its claims against Casey and MPF. When the USDA's information support's PETA's cause, PETA is quick to cite the USDA as proof. But when the USDA fails or refuses to agree with PETA, PETA condemns the USDA [and its qualified staff] for the purpose of suggesting to the Court's that PETA – and only PETA – is truly qualified to determine whether the chimpanzees are in good health.

WHEREFORE, Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C and Carrie Cramer pray:

A. That the Court enter an Order protecting them from being compelled to testify as it is their constitutional right to invoke the Fifth and Fourteenth Amendments to the United States Constitution;

B. That the Court enter an Order denying PETA's Motion to Compel Compliance with the Subpoenas;

C. That the Court grant Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C.'s Motion to Quash PETA's subpoenas for inspection, production and deposition;

D. That the Court grant Carrie Cramer's Motion to Quash PETA's subpoenas for inspection, production and deposition; and

E. That the Court enter a Protective Order pursuant to FRCP 26 to further protect Harold L. DeYoung d/b/a DeYoung Family Zoo, L.L.C. and Carrie Cramer.

Respectfully submitted,

**MCCHESNEY & ORTWERTH, L.L.C.**


**/s/ Brian S. McChesney**
**Brian S. McChesney #40545MO**
*bmcchesney@gatewayinjurylaw.com*
**1922 Chouteau Avenue**
**St. Louis, Missouri 63103**
**(314) 584-4500**
**(314) 584-4501 facsimile**
*Attorney for DeYoung Family Zoo*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 24th day of January, 2019.

James P. Martin
*jmartin@polsinelli.com*
POLSINELLI, PC
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
*Attorney for Movant*
*People for the Ethical Treatment*
*of Animals, Inc.*

Jared S. Goodman
*JaredG@petaf.org*
PETA FOUNDATION
2154 W. Sunset Blvd.
Los Angeles, CA 90026
*Attorney for Movant*
*People for the Ethical Treatment*
*of Animals, Inc.*

**/s/ Brian S. McChesney**